2026 IL App (2d) 250324-U
No. 2-25-0324
Order filed July 14, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

HOWARD L. MEYERS, Plaintiff-Appellant,

v.

RYTEC CORPORATION, Defendant-Appellant

(Paul Reilly Company, Paul Reilly Company Illinois, Inc., Pfanstiehl Labs, Pfanstiehl, Inc., and Ferro Pfanstiehl Laboratories, Inc., Defendants).

Appeal from the Circuit Court of Lake County.
Honorable Joseph V. Salvi, Judge, Presiding.
No. 21-L-764

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court properly granted defendant's motion for summary judgment as plaintiff presented no genuine issue of material fact that defendant breached any duty of care to plaintiff when plaintiff was injured by a door that defendant had manufactured.

¶ 2   Plaintiff, Howard Meyers, while working at Pfanstiehl Labs in Waukegan, was hit in the head by an automatic overhead door that was closing as he attempted to walk underneath it. Plaintiff thereafter filed a complaint against numerous entities, including the door's manufacturer, defendant Rytec Corporation (Rytec). The circuit court of Lake County subsequently granted Rytec's motion for summary judgment. Plaintiff appeals from that order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The following facts are taken from the record. On November 5, 2007, Pfanstiehl Labs purchased a Rytec brand Pharma-Roll Door—an automatic steel roll-up door—to install at its Waukegan facility. Pfanstiehl purchased the door from Paul Reilly Company Illinois, Inc., (PRC)[1] a distributor of Rytec products. The door was a standard design Pharma-Roll door that rolled upward to open and downward to close. Pfanstiehl also added additional features that included explosion-proof components.

¶ 5     Antonio Lockett, Pfanstiehl's maintenance manager, testified in his discovery deposition how the door operated. The door operates automatically and can also be activated by a push button. The door is designed to open and close within a 20-second range. After remaining open for 20 seconds, the door automatically closes, which takes about 3 seconds. The door has photo eyes at the bottom. If you walk through the doors while it is closing, then the photo eyes will cause the door to immediately stop and roll back up.

¶ 6     Kristine Finell, Rytec's Chief Risk and Administrative Officer, testified in her discovery deposition that Pfanstiehl elected to add an explosion-proof application to the door that it ordered. Pharma-Roll doors with the explosion-proof application utilize a special photo eye sensor. Rytec does not manufacture the photo eye sensors. Because Pfanstiehl elected to add the explosion-proof application, the standard design was modified to incorporate the explosion-proof photo eye. Pfanstiehl had Genesis Architecture, LLC (Genesis) review and approve the final drawing for the

[1]The record is unclear whether Paul Reilly Company Illinois, Inc. and Paul Reilly Company are the same company. Only Paul Reilly Company Illinois, Inc. filed any responsive pleadings, and the trial court granted plaintiff's motion to voluntarily dismiss Paul Reilly Company. As such, to distinguish between those two entities, we will refer to Paul Reilly Company Illinois, Inc. as "PRC."

door. (The drawing that Genesis prepared depicted only the backside of the door). Shortly after the design was approved, Rytec started production of the door.

¶ 7 Finell testified that, on February 15, 2008, Rytec shipped the door to Pfanstiehl's Waukegan facility. The door was shipped with an Owner's Manual, Installation Manual, and the Drive & Control Manual. The Owner's Manual provided suggestions for planned maintenance, inspections, servicing and adjustments, and procedures to implement for replacing parts. The Installer's Manual provided instructions for proper installation of the door. The Drive & Control Manual provided instructions for the proper installation and operation of the control system designed to operate the door. The door was installed by American Door & Dock and K-Plus Engineering.

¶ 8 After purchasing the door, Pfanstiehl contracted with PRC to perform preventative maintenance, inspections, and repairs of the door. Rytec offered service training of its products to its dealers and customers. PRC technicians that performed maintenance, servicing, and inspections of the door at issue attended this training.

¶ 9 On July 29, 2019, plaintiff was working for Pfanstiehl at its Waukegan facility when he was injured by the door. Surveillance video showed that while the door was closing, plaintiff walked underneath it and was struck in the head. A subsequent root cause analysis determined that no interior sensor existed on the door.

¶ 10 On May 7, 2021, plaintiff filed a complaint against Rytec, Paul Reilly Company, PRC, Pfanstiehl Labs, Pfanstiehl, Inc. and Ferro Pfanstiehl Laboratories, Inc. On July 13, 2021, plaintiff filed his first amended complaint, asserting three different theories of liability: (1) negligence; (2) *res ipsa loquitor*; and (3) product liability. Count I alleged that Rytec was negligent in its installation, maintenance, service and repair of the door; Rytec negligently trained its employees

or third parties on the installation or maintenance of the door; and Rytec manufactured the door in violation of numerous codes. Count II claimed that the door was under Rytec's exclusive control and management and that plaintiff's injuries would not have occurred in the normal course of events without negligence. Count III asserted that Rytec failed to manufacture and produce a safe and suitable automatic door.

¶ 11     On February 17, 2022, plaintiff voluntarily dismissed his complaint against Paul Reilly Company, Pfanstiehl Labs, and Ferro Pfanstiehl Laboratories, Inc. On January 19, 2023, plaintiff voluntarily dismissed his complaint against Pfanstiehl, Inc. On that same day, the trial court granted PRC's motion for leave to file a counterclaim for contribution against Rytec.

¶ 12     On March 25, 2025, Rytec filed a motion for summary judgment. As to count I, Rytec asserted that its involvement with the door after shipment was limited to supplying replacement parts under warranty. It also asserted that it adequately warned customers on the proper installation, operation, maintenance, and service of the door. As to count II, Rytec argued that the doctrine of *res ipsa loquitur* did not apply because plaintiff could not establish that Rytec was in control of the door at the time it injured him. As to count III, Rytec argued that plaintiff's claim was barred by the applicable statute of repose.

¶ 13     On July 2, 2025, the court granted Rytec's motion for summary judgment and dismissed the contribution counterclaim filed by PRC. On July 31, 2025, the trial court amended its order to include a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no reason to delay enforcement of judgment or appeal. Plaintiff thereafter filed a timely notice of appeal.

¶ 14                          II. ANALYSIS

¶ 15    On appeal, plaintiff argues that the trial court erred in granting Rytec's motion for summary judgment. Specifically, plaintiff contends that factual questions remain as to whether Rytec was negligent for (1) failing to provide adequate instructions so that service providers installed the Pharma-Roll door in a safe and correct manner and (2) failing to properly train the PRC technicians on how to maintain the door.[2] Plaintiff also argues that the trial court erred in not considering the architectural drawing that depicted only one side of the door before granting summary judgment.

¶ 16    Before turning to the merits of this appeal, we address Rytec's arguments regarding the propriety of plaintiff's opening brief. Specifically, Rytec argues that plaintiff violated (1) Illinois Supreme Court Rule 341(h)(2) (eff. Oct. 1, 2020) by improperly injecting argument into the nature of the case and (2) Rule 341(h)(6) (eff. Oct. 1, 2020) by incorporating argument into the statement of facts. Rytec therefore asks that we strike those parts of plaintiff's brief that do not comply with the supreme court rules.

¶ 17    The purpose of the appellate rules of procedure is to require the parties before the reviewing court to present clear and orderly arguments, so that the court can properly ascertain and dispose of the issues presented. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. The procedural rules governing the content and format of appellate briefs are not suggestions; they are mandatory. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. "[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when

---

[2]Plaintiff only raises arguments as to the trial court's ruling on count I of his complaint. He raises no arguments as to counts II and III of his complaint. As such, he has forfeited any review of the trial court's ruling on those counts. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (issues not raised in the appellate court are forfeited).

the alleged violations of procedural rules interfere with or preclude review." *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000). This court has discretion to strike an appellant's brief and dismiss an appeal for failure to comply with the applicable rules of appellate procedure. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12.

¶ 18    Here, Rytec's argument is well taken that plaintiff's brief does not comply with the applicable rules. We therefore grant Rytec's motion to strike those portions of plaintiff's brief which do not conform with Rule 341 (h)(2) and (h)(6), and we will not consider arguments raised in those sections.

¶ 19    Turning to the merits, summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). When reviewing a trial court's award or denial of summary judgment, we must construe the pleadings, depositions, admissions, exhibits, and affidavits strictly against the moving party and liberally in favor of the nonmoving party. *Kornick v. Goodman*, 2023 IL App (2d) 220197, ¶ 12. The standard of review for the entry of summary judgment is *de novo*. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997).

¶ 20    Negligence concerns injuries arising from a defendant's breach of the duty of reasonable care (*Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140 (1990)) and focuses on the defendant's knowledge and conduct (*Woodill v. Parke Davis & Co.*, 79 Ill. 2d 26, 33-34, (1980)). To prove a negligent failure to warn claim, a plaintiff must show that the manufacturer negligently failed to instruct or warn of a danger of the product and that the failure proximately caused the plaintiff's injuries. *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 30; see also *Ford Motor Co. v Rushford*,

868 N.E. 2d 806, 810 (Ind. 2007) (adequacy of warnings implicates a breach of duty). The purpose of warnings is to reduce the risk of harm. This may be accomplished either by shifting or by reducing the risk of injury. Thus, if warnings are adequate, users proceed at their own risk. *Palmer v. Avco Distributing Corp.*, 82 Ill. 2d 211, 221 (1980). Examples of inadequate warnings include those that do not specify the risk, are inconsistent with use of the product, provide no reason for the warning, or do not reach the user. *Id.* Generally, the adequacy of a warning is a question of fact. However, the sufficiency of the warning can become a question of law where the warning is clear, accurate and unambiguous. *Hernandez v. Schering Corp.*, 2011 IL App (1st) 093306, ¶¶ 38-40.

¶ 21 Here, the issue is whether Rytec sufficiently warned that photo eyes needed to be installed on both sides of the door as a safety measure. A review of the manuals that it provided with the door indicates that it did. The installation manual stated:

> "*NOTE: The door has two sets of safety photo eyes used as a safety device to prevent the door from closing if an object is in the path of the door panel.*" (Emphasis in original).

The owner's manual provided under "OPERATION:"

> "PHOTO EYES
>
> *Your door is equipped with two photo eyes, one mounted on the front and one field installed on the back of the door. The purpose of these photo eyes is to hold the door open or, if the door is closing, reverse the door to the open position if a vehicle, person or any object is in the path of the photo eye beam.*" (Emphasis in original).

The owner's manual further stated under "PLANNED MAINTENANCE—RECOMMENDED SCHEDULE:"

> "Photo Eye Inspection

*NOTE: Two photo eyes have been provided with the door. These photo eyes act as a safety device to prevent the door from closing if an object is within the photo eye beam. The safety photo eyes are not meant to be used as door activators.*

\* \* \*

WARNING

Personnel or objects being used for this inspection should not be in the path of the door panel when this check is made. If photo eye is not working properly the door panel will lower, striking personnel or objects in its path. DO NOT use the door if the photo eyes do not operate properly." (Emphasis in original).

¶ 22     Plaintiff acknowledges that the instruction manuals stated that two photo eyes needed to be installed on the doors for safety. However, he insists that the instructions lacked cautionary language that there was a risk of serious injury if the photo eyes were not properly installed. We disagree. The instructions in the operations section plainly warned that multiple photo eyes, one installed on the front and one on the back, were necessary to prevent the door from striking someone.

¶ 23     Plaintiff also argues that the site-specific architecture documents that accompanied the instruction manuals were insufficient as they depicted only one side of the door and failed to provide sufficient safety instructions. Plaintiff asserts that "[a]s a result of that failure, no safety eye was installed and [he] was injured when the door failed to reverse."

¶ 24     There are multiple problems with this argument. First, Rytec was not the one who prepared the architectural drawing. Rather, Pfanstiehl hired Genesis to review and approve the final drawings for the door. The architectural drawing distinctly bears Genesis' stamp. Plaintiff cites

no basis to hold Rytec responsible for the alleged inadequacy of a drawing that Rytec did not create.

¶ 25    Second, plaintiff's argument assumes that those responsible for installing and later maintaining the door considered only the architectural drawing and not the instruction manuals that Rytec provided.  Such an argument is not well-founded, however, as manufacturers are entitled to the presumption that people will read the instructions that the manufacturer provides.  See *Taylor v. Gerry's Ridgewood, Inc.*, 141 Ill. App. 3d 780, 785 (1986) (manufacturers are entitled to assume that such warnings, if communicated, will be heeded).

¶ 26    Third, although the architectural drawing shows only one side of the door, the side it displayed was the backside of the door.  That drawing depicted a photo sensor on the door.  Thus, plaintiff's assertion that the installers did not install a photo sensor on the backside of the door because it was not depicted in the drawing is contrary to the evidence.  Accordingly, based on the foregoing, we also reject plaintiff's argument that the trial court erred in not placing greater weight on the architectural drawing, as the drawing provided no basis for a negligence claim against Rytec.

¶ 27    We next turn to plaintiff's argument that Rytec is liable for his injuries because its training of the PRC technicians was inadequate.  Plaintiff cites no authority and minimal facts in support of this argument. As such, his argument is forfeited. See *Bachman v. General Motors Corp*, 332 Ill. App. 3d 760, 803 (2002) (bare contentions and arguments by a party that do not satisfy Rule 341(h)(7) may be rejected for that reason alone).

¶ 28    Forfeiture aside, plaintiff's argument is without merit.  Plaintiff improperly frames his argument as being that Rytec negligently trained PRC's technicians.  An assertion of negligent training, hiring or supervision arises only in the employer-employee context.  See *Doe v. Coe*, 2019 IL 123521, ¶ 55 (noting that a plaintiff can assert a negligent supervision claim based on a

particular duty or a general duty based on the employment relationship); *Hall v. SSF, Inc.*, 930 P. 2d 94, 99 (Nev.1996) (employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions). As PRC was not an employee of Rytec, Rytec had no duty to train PRC's technicians. *Hall*, 930 P. 2d at 99.

¶ 29 The actual argument that plaintiff seems to be making is that Rytec voluntarily assumed a duty to train the PRC technicians on how to maintain the door and that Rytec breached that duty by training them improperly. Like other issues involving the existence of a duty, whether a defendant has voluntarily undertaken a duty to plaintiff presents a question of law for the court. *Jakubowski v. Alden-Bennett Construction Co.*, 327 Ill. App. 3d 627, 639 (2002). Under this theory, the scope of a voluntarily assumed undertaking "is limited to the extent of the undertaking" and narrowly construed. (Internal quotation marks omitted). *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 123. Plaintiff must allege well-pled facts showing breach and proximate cause to recover when a voluntary undertaking is alleged. *Purevdori v. Mission Hills Condo. T-2 Ass'n*, 2024 IL App (1st) 231693, ¶ 41.

¶ 30 In considering whether a defendant has breached a voluntary duty, courts draw an important distinction between misfeasance and nonfeasance. *Jakubowski*, 327 Ill. App. 3d at 640. "Misfeasance" is the improper performance of an act that a person may lawfully do, and "nonfeasance" is the omission of an act which a person ought to do. *Purevdori*, 2024 IL App (1st) 231693, ¶ 44. A breach of duty can be found only where there is misfeasance rather than nonfeasance. *Lange v. Fisher Real Estate Development Corp.*, 358 Ill. App. 3d 962, 974 (2005).

¶ 31 Plaintiff's allegations of wrongdoing here—that Rytec failed to train the PRC technicians "to identify and correct the Pharma-Roll door"—relate only to nonfeasance. See *Jakubowski*, 327

Ill. App. 3d at 640 ("plaintiff \*\*\* alleged only acts of nonfeasance, such as allowing or permitting conditions to exist unguarded or unprotected, failing to implement safety measures, failing to institute safeguards, failing to post warnings and failing to place fencing or barricades around the premises"). By alleging only nonfeasance, plaintiff did not establish an actionable breach of an alleged voluntary undertaking. *Purevdori*, 2024 IL App (1st) 231693, ¶ 45.

¶ 32    Further, plaintiff cannot prove proximate cause because he fails to set forth any facts that he relied on Rytec's training of the PRC technicians. *Mann v. Producer's Chemical Co.*, 356 Ill. App. 3d 967, (2005) (to establish proximate cause of the injury under a voluntary undertaking theory, plaintiff must show that he relied on defendant's conduct). "One cannot rely on an undertaking that he does not even know about and only later learns of." *Lange*, 358 Ill. App. 3d 962, 973-74. As plaintiff failed to establish that he relied on Rytec's training of the PRC technicians, that is an additional basis to find that plaintiff's argument is without merit. *Purevdori*, 2024 IL App (1st) 231693, ¶ 41.

¶ 33                               III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 35    Affirmed.